```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,                    :
                                             :
              v.                             :       MEMORANDUM & ORDER
                                             :       21-CR-411 (WFK)
ANGEL CABRERA,                               :
                                             :
              Defendant.                     :
------------------------------------------------------------X
```

**WILLIAM F. KUNTZ, II, United States District Judge:**

On February 7, 2023, Defendant pled guilty to Count One of a thirteen-count Indictment, charging him with Conspiracy to Commit Access Device Fraud, in violation of 18 U.S.C. § 1029(b)(2). Plea Agreement ¶ 1, ECF No. 157; *see generally* Indictment, ECF No. 70. The Court now sentences Defendant and provides a complete statement of reasons, pursuant to 18 U.S.C. § 3553(c)(2), of those factors set forth by Congress in 18 U.S.C. § 3553(a). For the reasons set forth below, Defendant is sentenced to twenty-four (24) months' imprisonment, to be followed by two (2) years' supervised release, with both the standard and special conditions of supervision; restitution in the amount of $129,877.00, plus interest, as set forth in the Order of Restitution; forfeiture in the amount of $129,877.00, as set forth in the Order of Forfeiture; and a $100.00 mandatory special assessment.

## I.  BACKGROUND

### A. Background of COVID-19 Emergency Relief Funds

In March 2020, the President of the United States signed into law various acts providing financial assistance to individuals affected by the onset of the COVID-19 pandemic. Sealed PSR ¶¶ 7–14. These acts included the: (1) Families First Coronavirus Response Act, which provided administrative funding for state unemployment insurance ("UI") agencies; and (2) Coronavirus Aid, Relief, and Economic Security Act ("CARES" Act), which expanded the ability of states to provide UI for workers affected by COVID-19. *Id.* ¶¶ 9–10. The CARES Act created new UI programs, including Pandemic Unemployment Assistance and Federal Pandemic Unemployment Compensation. *Id.* ¶ 11. As the pandemic continued, the President authorized additional funding to alleviate COVID-19-related financial hardship. *See id.* ¶¶ 13–14.

The NYSDOL operates New York's unemployment system and distributes UI benefits. *Id.* ¶ 7. New York's UI benefits are distributed primarily through the New York State Unemployment Insurance Fund ("NYSUIF"). *Id.* Individuals could claim NYSUIF benefits through the NYSDOL website. *Id.* ¶ 15. Once approved, claimants could elect how to receive their NYSUIF benefits. *Id.* ¶ 16. One option was to receive a KeyBank National Association ("KeyBank") debit card pre-loaded with benefits. *Id.* Another was to upload personal debit card information to the NYSDOL website for funding. *Id.* A third was to upload personal bank account information to the NYSDOL website to receive a direct deposit. *Id.*

### B. The Fraudulent Scheme

Between June 2020 and April 2021, Defendant and his co-conspirators submitted approximately 250 fraudulent UI claims to NYSDOL using the personal identifying information ("PII") of real individuals ("the victims"). *Id.* ¶ 19. Defendant and his co-conspirators obtained these victims' PII by, among other things, using Bitcoin to purchase the information from individuals on Telegram, an encrypted messaging application. *Id.* ¶ 20.

Defendant and his co-conspirators opted to receive NYSUIF benefits through KeyBank debit cards and direct deposit. *Id.* ¶ 22. Defendant and his co-conspirators made purchases directly with the KeyBank debit cards or else used them to withdraw large amounts cash from various ATM machines throughout the Eastern District. *Id.* ¶ 23.

During the offense period, Defendant and his co-conspirators took photographs flaunting their wealth. *Id.* ¶ 25. In online posts, Defendant and his co-conspirators can be seen wearing designer clothes, accessories, and jewelry while surrounded by stacks of cash and luxury cars. *Id.* ¶ 27; *see also* Gov't Sent'g Mem. at 3.

Defendant and his co-conspirators ultimately submitted more than $8,900,000.00 in fraudulent claims, receiving more than $1,750,000.00 in NYSUIF benefits before NYSDOL detected the fraud. PSR ¶ 19. Defendant submitted fraudulent claims under the names of at least thirty-six (36) victims, yielding approximately $130,059.00 in fraudulent NYSUIF benefits. *Id.* ¶ 29.[1]

### C. Procedural History

On May 14, 2021, the Government filed a then-sealed Complaint alleging Defendant and others fraudulently filed federal and state unemployment insurance claims, using the PII of third-party victims to receive UI benefits funded by COVID-19 pandemic assistance programs. Compl., ECF No. 1.

On August 5, 2021, a grand jury returned a thirteen-count Indictment charging Defendant with one count of access device fraud and one count of conspiracy to commit access device fraud, in violation of 18 U.S.C. §§ 1029(a)(2), (a)(5), and (b)(2); and one count of aggravated identity theft, in violation of 18 U.S.C. §§ 1028A(a)(1), (b), (c)(4), and (c)(5). Indictment, ECF No. 70.

Defendant was released from custody on May 18, 2021, on a $75,000.00 bond with reporting conditions. Order Setting Conditions of Release, ECF No. 19. Defendant participated

---

[1] The PSR and the Government's sentencing submission both discuss Defendant's involvement in other fraudulent schemes not covered by the instant offense. First, Defendant was in a Telegram group chat with his co-defendants in which the chat members discussed how to make fraudulent claims on Blueacorn and Womply, providers of Paycheck Protection Program (PPP) loans. PSR ¶ 37; Gov't Sent'g Mem. at 3–4. Second, in another Telegram chat between Defendant and a co-defendant, Defendant shared forged Ohio tax forms for a third-party. PSR ¶ 38; Gov't Sent'g Mem. at 3–4. Third, Defendant was involved in a scheme to purchase iPhones for resale using the names of various third-party victims to obtain financing. PSR ¶ 39; Gov't Sent'g Mem. at 3–4.

in the Special Options Services (SOS) program, which offered him educational and vocational training support—opportunities that Defendant spurned. PSR ¶ 5.

On May 6, 2022, co-defendant Seth Golding pled guilty to one count of Conspiracy to Commit Access Device Fraud, in violation of 18 U.S.C. §§ 1029(b)(2), (c)(1)(A)(ii). Plea Agreement as to Seth Golding, 1:22-CR-143, ECF No. 90. On June 9, 2022, co-defendant Andre Ruddock pled guilty to one count of Operating an Unlicensed Money Transmitting Business, in violation of 18 U.S.C. § 1960(a). Plea Agreement as to Andre Ruddock, ECF No. 121. On January 23, 2023, co-defendant Carlos Vazquez pled guilty to one count of Conspiracy to Commit Access Device Fraud, in violation of 18 U.S.C. § 1029(b)(2), and one count of Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A(a)(1). Plea Agreement as to Carlos Vazquez, ECF No. 148. On January 24, 2023, co-defendant Gianni Stewart pled guilty to one count of Conspiracy to Commit Access Device Fraud, in violation of 18 U.S.C. § 1029(b)(2). Plea Agreement as to Gianni Stewart, ECF No. 150. On January 26, 2023, co-defendant Bryan Abraham pled guilty to one count of Conspiracy to Commit access Device Fraud, in violation of 18 U.S.C. § 1029(b)(2), and one count of Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A(a)(1). Plea Agreement as to Bryan Abraham.

On February 7, 2023, Defendant pled guilty to one count of Conspiracy to Commit Access Device Fraud, in violation of 18 U.S.C. § 1029(b)(2). Plea Agreement as to Angel Cabrera, ECF No. 157. On February 17, 2023, co-defendant Armani Miller pled guilty to one count of Conspiracy to Commit Access Device Fraud, in violation of 18 U.S.C. § 1029(b)(2). Plea Agreement as to Armani Miller, ECF No. 160. On June 25, 2025, the Court removed Defendant from the SOS program. *See* ECF Nos. 309, 311. To date, the Court has sentenced five of Defendant's co-defendants.

## II.     LEGAL STANDARD

Congress set forth the procedures for imposing a sentence in a criminal case in 18 U.S.C. § 3553.  Together with 18 U.S.C. § 3553, the United States Federal Sentencing Guidelines operate as the "starting point and the initial benchmark" for a court evaluating a criminal sentence.  *Gall v. United States*, 552 U.S. 38, 49 (2007).  If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines.  18 U.S.C. § 3553(c)(2).  The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form."  *Id.*  The court's statement of reasons "shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)."  *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.) (internal citation omitted).

When determining the appropriate sentence, the court must consider seven different factors: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the kinds of sentence and the sentence range established by the Guidelines; (5) any pertinent policy statements issued by the United States Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among similar defendants found guilty of similar conduct; and (7) the need to provide restitution to victims of the offense.  *See* 18 U.S.C. § 3553(a).  The Court now addresses each factor in turn.

5

## III.   ANALYSIS

### A. The Nature and Circumstances of the Offense and the History and Characteristics of Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

####   1.   *Family and Personal Background*

Defendant was born on August 22, 2002, in Moca, Dominican Republic. PSR ¶ 71. He was raised in a close-knit, lower-income household. *Id.* ¶ 73. Defendant and his family immigrated to the United States in 2010. *Id.* Defendant is a legal permanent resident. *Id.* ¶ 76.

Defendant's father previously worked as a taxi driver in the Dominican Republic; he has been unemployed since suffering a stroke in 2018 that left him partially paralyzed. *Id.* ¶¶ 71, 73. Defendant's mother is healthy and works as a home health aide. *Id.* ¶ 71. Defendant has two brothers, one of whom lives with Defendant. *Id.* ¶ 72. Defendant's other brother lives in the Bronx, New York. *Id.* Defendant's parents and brothers are aware of this case and supportive. *Id.* ¶¶ 71–72.

Defendant is also close with his extended family and reports that his entire family now lives in the United States. *Id.* ¶ 73. Defendant has never been married and has no children. *Id.* ¶ 75.

6

### 2. *Educational and Employment History*

In 2021, Defendant graduated from the High School for Medical Professions in Brooklyn, New York. *Id.* ¶ 83. Defendant is currently enrolled in school to receive his barber's license. *Id.* ¶ 82.

In fall 2021, Defendant worked as a package handler with UPS. *Id.* ¶ 88. From April 2022 to October 2022, Defendant worked in retail at a Lowe's Home Improvement store. *Id.* ¶ 87. From December 2022 onward, Defendant worked part-time at a Whole Foods warehouse. *Id.* ¶ 86.

### 3. *Prior Convictions*

Defendant has no prior convictions. *Id.* ¶¶ 64–67.

### 4. *Physical and Mental Health*

Defendant reports no physical or mental health conditions or issues. *Id.* ¶¶ 78–79.

### 5. *Substance Abuse*

Defendant reports not drinking alcohol. *Id.* ¶ 81. Defendant used marijuana daily before his arrest for the instant offense. *Id.* ¶ 80. He states he was "able to quit using the drug on his own and does not believe substance abuse treatment is necessary." *Id.* Despite this statement, Defendant tested positive for marijuana use multiple times while awaiting sentencing. *See* Sealed Pretrial Violation Memoranda, ECF Nos. 134, 163, 179, 279, 291, and 307.

### 6. *Nature and Circumstances of the Offense*

The Court's previous statements address the nature and circumstances surrounding the instant offense. *See supra* Part I.

### B. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence recognizes the seriousness of Defendant's conduct, which involved stealing innocent victims' identities to obtain disaster relief funds for his personal gain. Defendant and his co-conspirators submitted approximately 250 claims to New York's unemployment benefits office, claiming nearly $9,000,000.00 in fraudulent benefits and receiving more than $1,750,000.00 in disbursements. PSR ¶ 19. Defendant submitted or caused to be submitted at least thirty-six fraudulent claims. *Id.* ¶ 29. The Court's sentence will deter others from engaging in similar conduct and justly punish Defendant for his crimes. Accordingly, the Court's sentence is "sufficient, but not greater than necessary" to comply with the purposes set forth in this factor. 18 U.S.C. § 3553(a).

### C. The Kinds of Sentences Available

The third Section 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3). Defendant pled guilty to one count of Conspiracy to Commit Access Device Fraud, in violation of 18 U.S.C. § 1029(b)(2). Plea Agreement ¶ 1. Defendant faces a statutory maximum term of seven-and-a-half years' imprisonment and no minimum term. 18 U.S.C. §§ 1029(b)(2), (c)(1)(A)(ii). He also faces a maximum term of three years' supervised release. 18 U.S.C. §§ 3583(b)(2), (e). If a condition

of supervised release is violated, Defendant may be sentenced to up to two years without credit for pre-release imprisonment or time previously served on post-release supervision. 18 U.S.C. §§ 3583(b)(2) and (e). Defendant is eligible for between one- and five-years' probation. 18 U.S.C. § 3561(c)(1). One of the following must be imposed as a condition of probation unless extraordinary circumstances exist: a fine, restitution, or community service. 18 U.S.C. § 3563(a)(2).

In addition, Defendant faces a maximum fine of the greater of $250,000.00, or twice the gross gain or twice the gross loss; he appears unable to pay this fine. 18 U.S.C. §§ 3571(b)(2), (b)(3), and (d); PSR ¶ 93. The Court is also required to impose a mandatory special assessment of $100.00 per count pursuant to 18 U.S.C. § 3013(a)(2)(A).

### D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offense

The fourth Section 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . [t]he applicable category of offense committed by the applicable category of defendant as set forth in the guidelines." *Id.* § 3553(a)(4)(A).

The applicable guideline for Conspiracy to Commit Access Device Fraud is U.S.S.G. §2B1.1(a)(2), which provides a base offense level of six (6). Sixteen (16) levels are added under U.S.S.G. §2B1.1(b)(1)(I) because the offense involved a loss of $1,788,429.00, which is more than $1,500,000.00 but less than $3,500,000.00.

Further enhancements apply. Two (2) levels are added under U.S.S.G. §2B1.1(b)(2)(A)(i) because the offense involved ten or more victims. Two (2) levels are added under U.S.S.G. §2B1.1(b)(11)(C)(i), because the offense involved the unauthorized transfer or use of identification unlawfully to produce or obtain any other means of identification. Two (2) levels are added under U.S.S.G. §2B1.1(b)(12) because the offense involved fraud in connection

9

with major disaster or emergency benefits (*see* 18 U.S.C. § 1040). These enhancements yield an offense level of 28.

Three (3) levels are reduced for Defendant's timely acceptance of responsibility under U.S.S.G. §3E1.1(a)–(b). PSR ¶¶ 61–62. An additional two (2) levels are reduced because Defendant qualifies as a zero-point offender. *Id.* ¶ 62(a); U.S.S.G. §4C1.1. Finally, the parties agreed to an additional one (1) level reduction under Policy Statement 5K2.0 of the Guidelines. *See* PSR Addendum ¶ 109. These reductions yield a total adjusted offense level of 22.

Criminal History Category

All parties agree Defendant has no criminal history, resulting in a criminal history category of I. PSR ¶ 66; Gov't Sent'g Mem. at 5; Def. Sent'g Mem. at 5, 9, ECF No. 319.

Effective Guidelines Ranges

Probation and the Government argue Defendant has a total offense level of 22, which, together with a criminal history category of I, results in a Guidelines range of 41–51 months' imprisonment. PSR Addendum ¶ 109; Gov't Sent'g Mem. at 5. Defense counsel does not provide a separate calculation of Defendant's total offense level or corresponding Guidelines range. *See generally* Def. Sent'g Mem.

The Parties' Sentencing Recommendations

Probation recommends a below-Guidelines sentence of twenty-four (24) months' imprisonment; two (2) years' supervised release with special conditions; restitution in the amount of $1,788,429.00; and the $100.00 mandatory special assessment. U.S. Prob. Sent'g Rec. at 1, ECF No. 189-1; Revised U.S. Prob. Sent'g Rec. at 1, ECF No. 321-1. The Government recommends a below-Guidelines sentence of not less than twenty-four (24) months' imprisonment. Gov't Sent'g Mem. at 1. Defense counsel recommends a non-custodial sentence

of three (3) years' probation. Def. Sent'g Mem. at 1. The Court appreciates the sentencing arguments raised by all parties and has considered each in turn.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth Section 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5).

Defense counsel directs the Court to the policy considerations in U.S.S.G. §5H1.1, which the United States Sentencing Commission amended in November 2024. Def. Sent'g Mem. at 7. Prior to the amendment, U.S.S.G. §5H1.1 stated: "Age may be relevant in determining whether a departure is warranted." *See* United States Sentencing Commission, Amendment 829. In its amended form, U.S.S.G. §5H1.1 states: "A downward departure also may be warranted due to the defendant's youthfulness at the time of the offense. . . ." *Id.* Defense counsel emphasizes Defendant was only eighteen at the time he committed the instant offense. Def. Sent'g Mem. at 5–7. Probation and the Government likewise point to Defendant's young age as a mitigating factor. PSR ¶ 110; Gov't Sent'g Mem. at 8.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth Section 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

On April 28, 2023, the Court sentenced co-defendant Andre Ruddock to three (3) years' probation for one count of Operating an Unlicensed Money Transmitting Business, in violation of 18 U.S.C. § 1960(a). Mem. & Order as to Andre Ruddock, ECF No. 174. On May 8, 2024, the Court sentenced co-defendant Gianni Stewart to twenty-four (24) months' imprisonment for one count of Conspiracy to Commit Access Device Fraud. Mem. & Order as to Gianni Stewart,

11

ECF No. 259.  On May 13, 2024, the Court sentenced co-defendant Seth Golding to fifty-seven (57) months' imprisonment for one count of Conspiracy to Commit Access Device Fraud.  Mem. & Order as to Seth Golding, 1:22-CR-143, ECF No. 118.  And on May 14, 2024, the Court sentenced co-defendant Armani Miller to fifty-seven (57) months' imprisonment for one count of Conspiracy to Commit Access Device Fraud.  Mem. & Order as to Armani Miller, ECF No. 264.  On May 21, 2025, the Court sentenced co-defendant Bryan Abraham to sixty (60) months' imprisonment for one count of Conspiracy to Commit Access Device Fraud and one count of Aggravated Identity Theft (which carries a statutory term of two (2) years' imprisonment).  Mem. & Order as to Bryan Abraham, ECF No. 302.

Defense counsel asks the Court to impose a lower sentence than it gave his co-defendants.  Def. Sent'g Mem. at 8.  In fact, defense counsel emphasizes how Defendant faces "severe immigration consequences" and has no family or support network in the Dominican Republic.  Id.  "The potential for removal from the United States—the only country Angel considers home—serves as an additional, extraordinary punishment."  Id.

The Government argues its requested sentence would not create unwarranted disparity among similarly situated co-defendants.  First, the Government contends Defendant's best comparator among his co-defendants is Gianni Stewart, who had the same Guidelines range as Defendant and was nineteen at the time of the crime.  Gov't Sent'g Mem. at 9–10.  Notably, Defendant did not use ill-gotten profits to support violence or other crimes, in contrast to other convicted criminals.  Id. at 7.  And unlike some of his co-defendants, Defendant has no history with firearms or violence.  Id. at 8.

For the reasons stated in this Memorandum and Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

Finally, the seventh Section 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7).

Restitution is mandatory in this case pursuant to 18 U.S.C. § 3663A. The Court entered an Order of Restitution in this case on May 10, 2024, directing Defendant to pay a total restitution amount of $129,877.00 plus interest. Order of Restitution ¶ 2, ECF No. 256.

## IV.     CONCLUSION

For the reasons set forth above, Defendant is sentenced to twenty-four (24) months' imprisonment, to be followed by two (2) years of supervised release, with both the standard and special conditions of supervision; restitution in the amount of $129,877.00 plus interest, as set forth in the Order of Restitution; forfeiture in the amount of $129,877.00, as set forth in the Order of Forfeiture; and the $100.00 mandatory special assessment. This sentence is sufficient but no greater than necessary to accomplish the purposes of Section 3553(a)(2). The Court does not impose a fine given Defendant's apparent inability to pay.

The Court expressly adopts the factual findings of the Sealed Presentence Investigation Report and Addendum thereto, as corrected herein, to the extent those findings are not inconsistent with this opinion.

SO ORDERED

**s/WFK**

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: September 16, 2025
        Brooklyn, New York